UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: KIDS WORLD OF AMERICA, INC.         Case No. 04-35242
    Debtor                                                Chapter 11

_____

KIDS WORLD OF AMERICA, INC.              Adv. Proc. No. 05-03217
    Plaintiff

vs.

STATE OF GEORGIA, DEPT. OF
EARLY CARE AND LEARNING
    Defendant

MEMORANDUM OPINION

THIS CORE PROCEEDING[1] comes before the Court on Defendant State of Georgia Department of Early Care and Learning's ("Defendant") Motion for Summary Judgment and Plaintiff/Chapter 11 Debtor Kids World of America, Inc.'s ("Plaintiff") Response. The Plaintiff, a child care provider, filed a Complaint for Turnover of Funds, seeking money allegedly owed to it pursuant to an asserted contract with the Defendant. The Defendant filed the present Summary Judgment motion claiming the Plaintiff's lawsuit is barred by the doctrine of sovereign immunity established by the Eleventh Amendment or that it was entitled to a judgment as a matter of law because it did not enter into a written contract with Plaintiff for the 2005-2006 fiscal year.

---

[1] See 28 U.S.C. §§157(b)(2)(A) and (E).

1

Oral arguments were held on the Summary Judgment motion on April 21, 2006. Following the oral arguments, the Plaintiff was permitted to file additional exhibits for consideration by the Court. The Defendant was then permitted to file a response, to which the Plaintiff could file a reply. Upon the filing of the reply, this matter was deemed submitted.

## Findings of Fact

The Defendant is a state agency created under applicable Georgia law that runs Bright from the Start, which provides funding for child care and education services to day care providers throughout the state. In order to receive such funding, a child care provider must submit an application to the Defendant, which Bright from the Start may or may not accept, and only then enter into a valid contract for funding. As noted, the Plaintiff is a child care provider with locations in Georgia that applied for and was granted a contract with the Defendant for a Bright from the Start contract for the fiscal year running from July 1, 2004-June 30, 2005.

Providers who have been granted contracts for previous years must resubmit an application to the Defendant for each year they wish to continue to receive funding through the Bright from the Start program. These "Continuation Programs" may be pre-approved if the programs are in "good standing." Under the terms of the Bright from the Start application, programs in "good standing" are those that "have maintained full classes, met all program and reporting requirements, met child care licensing regulations, met federal nutrition program rules where applicable, have no unresolved audit or reconciliation issues and are not on probation." If providers are in "good standing," then they may be "pre-approved for the same number of classes at the same location(s) as the current year." Providers who wish to add additional classes "must complete an expansion application by the due date but are still pre-approved for the same

2

number of classes at the same location(s) as the current year." On the first page of the application under the heading "Special Note: Funding for New and Expansion Classes", it specifically states "[i]n past years, providers have operated partially or fully funded private classes in an effort to receive funding from the Department. Providers are strongly advised that operating private classes or funding classes at provider expense does not guarantee Department funding." All applicants must submit their applications in February for the fiscal year commencing the coming July.

In February 2005, the Plaintiff applied to Bright from the Start for a "continuation" contract and also applied for funding for additional, or expansion, classes. At or around the time Plaintiff submitted its 2005-2006 application, it was audited by the Defendant ("2005 Audit"). The Plaintiff had undergone a previous audit by the Defendant for the 2002-2003 fiscal year ("2003 Audit"). The 2003 Audit began in April 2003 and concluded in October 2003. Following the successful completion of the audit, the Defendant funded the Plaintiff's 2003-2004 contract and retroactively paid the Plaintiff for services from the beginning of 2003 fiscal year.

The 2005 Audit began in approximately February 2005 and continued through October 2005. Throughout the audit process the Plaintiff was in contact with the auditors regarding documentation and paper work that was required to complete the audit. Numerous emails were exchanged between Ms. Ruth Coon, a representative of the Plaintiff, and Ms. Daphne Haley, Director of the Pre-K Division of Bright from the Start. One such email is dated June 30, 2005, the last day of the 2004-2005 fiscal year. This email from Ms. Coon to Ms. Haley inquires as to whether Ms. Haley had received certain audit information that Ms. Coon had sent and asks if additional information needs to be forwarded. In the email Ms. Coon also states, "I know that

3

the '06 contract can't be approved until we get the audit resolved, but I need to start hiring teachers and setting up classrooms. Are you comfortable saying that our contract (with the additional class in Douglasville) will be renewed at the successful outcome of the audit?" In Ms. Haley's reply, which occurred less then an hour after she received the email, she asks for proof that the withholding taxes were paid, but does not address the question of whether the Plaintiff's contract will be renewed. On July 25, 2005 ("July 25 letter"), Tanya R. Astin, the Audit Coordinator, sent a letter to Ms. Coon confirming that audit information had been received and requested additional clarification regarding certain expenditures. The letter ended with the statement, "**[y]our contract will be held** and your organization may be ineligible to participate as a GA Pre-K program provider for fiscal year 2006." (emphasis in original).

　　　　The Plaintiff continued to provide childcare and educational services to children in Georgia for the fiscal year 2005-2006. The 2005 audit was completed in October 2005. The Plaintiff now seeks reimbursement for classes it provided to students beginning July 1, 2005, which, it contends, was done under the auspices of the Bright from the Start program. The Defendant responds that it does not have a valid contract with the Plaintiff for the 2005-2006 fiscal year because the Plaintiff was being audited and, thus, could not qualify as a continuation contract. Further, the application package clearly states that additional classes are not automatically approved, and any additional classes must be specifically approved. The Plaintiff counters (1) that it successfully passed the audit, (2) that the Defendant knew it was providing services as a Bright from the Start provider, (3) that it had undergone a similar audit in 2003, and, (4) that upon completion of the 2003 Audit, it was reimbursed for classes it provided during the pendency of its audit.

Conclusions of Law

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 ; Fed. R. Bankr. P. 7056.  All evidence, facts, and any inferences are drawn in the light most favorable to the nonmoving party. *Shah v. Deaconess Hospital*, 355 F.3d 496, 498 (6th Cir. 2004).

The Georgia Constitution waives sovereign immunity for written contracts only. GA Const. Art.1 §2 ¶IX.  The Defendant therefore claims the present suit is barred by sovereign immunity grounds because there is no written contract.  This argument raises two related but independent inquiries: (1) Is there a written contract? and (2) Does sovereign immunity bar a suit in this particular case?  As these questions stand alone, each will be examined separately.

Under applicable Georgia law a "written contract" may be both a formal written contract, or may consist of "multiple signed contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract" and, when taken together, "include all of the necessary terms of a contract."  *Board of Regents of the University System of Georgia v. Tyson,* 261 Ga. 368, 404 S.E.2d 557 (SC GA 1991),  *citing Baker v. Jellibeans,* 252 Ga. 458, 459(1984), finding that a "Consent to Care" form singed by a patient upon admission to a state hospital was not sufficient to qualify as a written contract to defeat sovereign immunity; *Board of Regents of the University System of Georgia v. Doe,* 2006 Ga. App. Lexis 368 (2006), *citing Baker v. Jellibeans,* 252 Ga. 458, 459 (1984), finding a contract where the parties reached an agreement that included salary information, benefits, decided on a start date and all other

necessary and typical terms of a contract. The parties agree that there is no signed formal contract for the 2005-2006 school year. The parties disagree, however, as to whether there are "multiple signed contemporaneous agreements" between them that "demonstrate their intent to enter into a binding contract" and that such writings contain all the "necessary terms of a contract."

The Plaintiff contends that the application submitted in approximately February of 2005, the letter dated July 25, 2005, and the emails sent during the course of the audit are sufficient when taken together, to prove the existence of a binding contract between the two parties. Under the applicable standard, the Plaintiff must show first that there are multiple signed contemporaneous agreements and then must demonstrate how such agreements evince an intent to enter into a binding agreement. Based upon the applicable standard and a thorough examination of the documentation submitted, the Court cannot find a valid, binding written contract.

To begin, the documents relied upon by the Plaintiff must be contemporaneous. The Plaintiff's documentation is spread out over a six month period of time. The documentation was not part of an ongoing discussion or negotiation as to details of the contract but instead centers upon an ongoing audit. Any mention of a contract for the 2005-2006 fiscal year is a side-note and not the focus of the correspondence. The subject of both the emails and the July 25 letter is the ongoing audit, and the possibility of a 2005-2006 contract is mentioned only briefly. The Court cannot find that these correspondence show an agreement as to the existence of a contract for the 2005-2006 fiscal year.

The documentation submitted by the Plaintiff additionally does not demonstrate an intent

on behalf of both parties to form a valid, binding contract for 2005-2006. The application submitted by the Plaintiff clearly shows that the Plaintiff wished to continue and expand upon the previous contract that it had with the Defendant. The Plaintiff cannot produce, however, a writing from the Defendant that shows a similar intent. The application packet itself states that continuation providers are pre-approved if they are in good standing and clearly states that providers subject to an audit are not in good standing. The wording in the application packet shows that the Defendant was not committing to a contract with a provider, such as Plaintiff, that was subject to an audit. The Plaintiff therefore had notice well before the fiscal year began on July 1, 2005, that the Defendant was not automatically continuing contracts with providers subject to an audit. Therefore, the application shows that the Plaintiff wished to enter a contract but also demonstrates that the Defendant did not intend to enter into a contract with the Plaintiff at that time.

Similarly, the emails exchanged between Ms. Coon and Ms. Hadley do not show a mutual intent to enter into a binding contract. These emails show that the Plaintiff wished to continue its contract, but it does not demonstrate a similar intention by the Defendant. Silence on the part of the Defendant in response to the Plaintiff's request to enter a contract does not fulfill the applicable standard for a written contract. The standard specifically calls for a demonstration of both parties intent to form a binding contract through written documentation. The emails only show that the Defendant was aware that the Plaintiff wished to continue its contract. That is not sufficient to meet the requirements for a written contract.

Finally, the Plaintiff attempts to rely on the wording of the July 25 letter that the Plaintiff's contract is held pending resolution of the audit. The Plaintiff claims that because the

letter states that the *contract* as opposed to the *application* is held proves that on July 25, 2005, the Plaintiff's acknowledged that a contract existed. The Court is not persuaded by this argument. To begin, this letter alone would be insufficient under the standard, which requires "multiple signed contemporaneous agreements." This letter was not a part of an ongoing discussion between the parties about whether a contract existed. Instead, this letter, as with all other correspondence from the Defendant, concerns information required for the audit. The final paragraph states that the Plaintiff's contract is "held" pending resolution of the audit, and, upon a plain reading, only shows that the Defendant had not yet decided if it was going to extend a contract to the Plaintiff for the 2005-2006 school year. Once again, this does not show an intent by the Defendant to form a contract for the 2005-2006 fiscal year.

This Court finds, considering a totality of the particular facts and circumstances, that there was neither a valid written contract nor a contract by multiple contemporaneous signed writings. With this inquiry complete, the Court must then look to see if sovereign immunity bars Plaintiff's asserted contract action against the Defendant. As stated above, the Georgia Constitution waives sovereign immunity for written contracts only. GA Const. Art.1 §2 ¶IX. While sovereign immunity would normally provide the state of Georgia with an absolute defense, the Supreme Court in its recent decision in *Central Virginia Community College v. Katz (In re Wallace Bookstores, Inc.)*, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) ("Hood II"), seemingly abrogates sovereign immunity in the bankruptcy court regarding such matters. Therefore, while this Court does find that there is no written contract between the parties, the inquiry is not yet complete. Considering a totality of the particular facts and circumstances, the Court is therefore not satisfied at this time that there are no possible alternative methods of recovery that are

available to the Plaintiff.  This remaining matter must, therefore, proceed to a trial on the merits to determine if there are any alternative theories on which the Plaintiff could succeed (e.g. quantum meruit/or unjust enrichment).

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Summary Judgment is granted in part as to whether a written contract exists.  The Case will, however, proceed to trial on the merits  to determine if the Plaintiff can prevail on an alternative theory.